FILED
IN CLERK'S OFFICE
US DISTRICT COURT

★ JAN 1 4 2013

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DENNIS COLON,

                    Petitioner,

        -against-

THOMAS LA VALLEY,

                    Respondent.
--------------------------------------------------------X

**REPORT & RECOMMENDATION**
**10-CV-2173 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

Dennis Colon ("petitioner") files this *pro se* petition seeking a writ of habeas corpus pursuant to

28 U.S.C. § 2254. Petitioner also seeks to amend his petition to add new grounds for his claims. The

Honorable Nicholas G. Garaufis, United States District Court Judge, referred this case to me for a

Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it

is respectfully recommended that the amendment should be granted but the petition should be denied.

## BACKGROUND

According to the testimony adduced at trial, on the morning of March 26, 2003, Vera

Krioutchkova received a telephone call at her apartment from a man claiming to be a plumber. (Tr. 537,

540-41.)[1] The man, later identified as petitioner, told Krioutchkova he had been hired by the landlord to

fix the leaking pipes in her apartment, which she had previously complained about. (Tr. 539-41.)

Petitioner arrived at Krioutchkova's apartment five to fifteen minutes later wearing a black stocking cap.

(Tr. 542-43, 567.) He inspected the plumbing for a short time and told Krioutchkova he would return

later that day to make repairs. (Tr. 545-46.) While walking towards the door, petitioner turned to

Krioutchkova, brandished a knife, and repeatedly told her, "Lie down. I'll kill you." (Tr. 546.) He

---

[1] "Tr." refers to the transcript of petitioner's trial in New York Supreme Court, Kings County, held from June 1, 2006 to June 8, 2006. (ECF Nos. 4-3–4-8, Ex. D to *Affidavit in Opposition to Petition for a Writ of Habeas Corpus* ("*Aff. in Opp'n*").)



pushed Krioutchkova onto her daughter's bed, held her down, and stuck his hand in her vagina. (Tr. 549-53.) In an attempt to escape, Krioutchkova asked petitioner to wash his hands; he complied, bringing Krioutchkova with him to the sink. (Tr. 550-51.) He then pushed her back to the bed, put his penis inside her vagina, and slapped her in the face. (Tr. 551.) Before leaving the apartment, petitioner told Krioutchkova to take a shower, and he warned her not to call the police. (Tr. 552-53.) As soon as petitioner left, Krioutchkova called the police. (Tr. 553.)

The police interviewed Krioutchkova in her apartment and escorted her to Coney Island Hospital. (Tr. 648, 653.) Alice Olosunde, a certified nurse midwife, performed Krioutchkova's pelvic examination and prepared a sexual assault evidence collection kit. (Tr. 812-13, 818.) The evidence kit was taken to the police station along with various items from Krioutchkova's apartment. (Tr. 650, 655-60.) When Krioutchkova returned to her apartment that evening, there was a voicemail message from petitioner on her answering machine, apologizing to Krioutchkova. (Tr. 562, 616-17.) She notified the police of the message. (Tr. 616-17.)

On April 5, 2003, shortly after midnight, Krioutchkova received another telephone call from petitioner, and her daughter called the police. (Tr. 563-66, 749.) Later that day, the police obtained telephone records confirming that two telephone calls had been placed from petitioner's residence to Krioutchkova on March 26th and April 5th. (Tr. 738-39, 750.)

That day, the police went to petitioner's residence and brought him to the police station, where petitioner gave a statement and consented to a DNA test and a search of his apartment. (Tr. 751, 759, 764-67.) Petitioner's DNA was later matched with evidence taken from Krioutchkova at the hospital, as well as evidence found on her bedspread. (Tr. 715.) Two black hats and an ornamental knife were seized from petitioner's bedroom. (Tr. 768-69.) At the police station, Krioutchkova identified petitioner in a

2

line-up, and she identified the knife and hat seized from petitioner's apartment. (Tr. 566, 772, 775.) The knife itself was destroyed before trial due to police error.[2] (Tr. 775.)

A felony complaint was filed against petitioner on April 5, 2003. (210.20 Decision at 1.)[3] There were numerous delays and adjournments after the complaint was filed, due predominantly to: (1) the prosecution's failure to provide the grand jury minutes after arraignment (approximately fourteen weeks); (2) the court's consideration of defense counsel's request for DNA testing on additional items seized from Krioutchkova's residence (approximately seventeen weeks); (3) the completion of the additional DNA testing (approximately thirty-four weeks); and (4) plea negotiations (approximately fourteen weeks). (Id. at 2-5.) Defendant was not incarcerated while his case was pending. (Id. at 4; S. 5-6.)[4] On May 13, 2005, the parties' plea negotiations were unsuccessful and the case was adjourned until May 24, 2005 for hearings and trial. On that date, defense counsel filed a motion to dismiss pursuant to N.Y. Crim. Proc. Law § 210.20(1)(g) on the grounds that petitioner had been denied his right to a speedy trial as guaranteed by N.Y. Crim. Proc. Law § 30.30 and § 30.20, the New York State Constitution, and the Sixth Amendment to the U.S. Constitution. (210.20 Motion, ECF No. 4-4 at 3-13.) The court denied the motion on July 26, 2005, finding no violation of § 30.30 or petitioner's constitutional due process rights. (210.20 Decision at 5.)

Petitioner's trial commenced on June 1, 2006.[5] (Tr. 500-01.) During a colloquy immediately before trial, petitioner's counsel raised a preliminary matter regarding the prosecution's intent to admit photographs of the knife into evidence. (Tr. 501.) Defense counsel stated that in 2003, the prosecution

---

[2] At trial, Detective Joyce Harvin testified that the knife had been mistakenly labeled as "investigation evidence" rather than "arrest evidence" on the property voucher. She stated that investigation evidence is destroyed after two years pursuant to police procedure. (Tr. 775.)

[3] "210.20 Decision" refers to the trial court's Decision and Order on petitioner's Motion to Dismiss under N.Y. Crim. Proc. Law § 210.20, dated July 26, 2005. (ECF No. 4-4 at 24-28, Ex. C to Aff. in Opp'n.)

[4] "S." refers to the transcript of petitioner's sentencing held on July 20, 2006. (ECF No. 4-8 at 64-72, Ex. D to Aff. in Opp'n.)

[5] A further delay of eleven months followed the resolution of petitioner's speedy trial motion. Although the record reflects that the court held a hearing on November 14, 2005, the record is otherwise silent as to the cause of this delay.

had initially disclosed that Krioutchkova had not identified the knife,[6] and he questioned the credibility

of Detective Joyce Harvin's testimony regarding the knife's identification at a hearing on November 14,

2005.[7] (Tr. 501-03.) The judge stated that he did not see any legal issues in defense counsel's arguments,

but he allowed defense counsel a recess to search for additional documents related to the knife's

disclosure and identification.[8] (Tr. 510-11.) Counsel did not produce the documents, and the Court

proceeded with trial. (Tr. 513.) Counsel again raised the issue of the knife's disclosure immediately

before the prosecution's opening statement (Tr. 526-27), as well as during the cross-examination of

Detective Harvin (Tr. 780-83).

During opening statements, defense counsel told the jury that he would show that the sexual

encounter between petitioner and Krioutchkova was consensual. (Tr. 531.) The defense offered no

witnesses, but counsel consistently sought to demonstrate that Krioutchkova's testimony was not

reliable and that she had fabricated the nonconsensual nature of her sexual encounter with petitioner due

to greed, forgetfulness, or mental instability. (Tr. 604-06, 612-13, 618-33, 663-65, 740, 779-82, 784,

823, 864-73, 876.) Counsel elicited testimony from Krioutchkova to suggest that she fabricated her story

in order to seek revenge on her landlord (Tr. 604-06, 618-19, 631-33); he pressed her for information

regarding her psychological condition, memory problems, and litigious history (Tr. 619-31); and he

highlighted portions of her testimony which were inconsistent with her previous statements (Tr. 612-17,

---

[6] Defense counsel produced a Voluntary Disclosure form dated April 14, 2003, which stated that "a folding knife was recovered at the time of arrest, but was not identified by the complainant." (Tr. 505-06.) Counsel further stated that if the prosecution intended to introduce photographs of the knife into evidence, he would seek to subpoena a former prosecutor on the case, but he did not make any applications to the court at that time or during trial. (Tr. 501-02, 511.)

[7] During the colloquy, the trial judge and parties reviewed notes and transcripts regarding the knife from previous court appearances and hearings. It is unclear from the record what types of pre-trial suppression hearings were held, but it appears that the court either conducted or considered conducting a Wade, Huntley, and Mapp hearing. (Tr. 503-04.) On the record before trial, the judge reviewed his notes from a court appearance on May 13, 2005, stating: "I wrote, '5/13 2005; everybody was present;' I wrote, 'Huntley, slash, Wade hearing.' I wrote, 'Was knife recovered, question.' Then it was put over for the hearing on 5/24. I wrote, 'People believe knife was recovered and consented to a Mapp.'" (Tr. 504.) Although petitioner's amended petition alleges that his attorney failed to request a Mapp hearing, (Am. Pet. 5; 440.10 App. Mot. ¶¶ 5-6, 15, ECF No. 8-1 at 5-6; 440.10 Mot., ECF No. 8-1 at 20-23), this is unclear from the record and the government does not specifically address whether a Mapp hearing was held.

[8] The trial judge noted that a suppression hearing had been held and the knife had not been suppressed. (Tr. 506.)

619-22). Counsel also challenged Olosunde's qualifications as an expert, and he specifically elicited testimony that Krioutchkova's genital injury could have been caused by forceful consensual intercourse. (Tr. 823.)

The government called five witnesses: Krioutchkova, two police officers, Olosunde, and an expert from Verizon. During Krioutchkova's direct examination, she was shown photographs of the knife and hat seized from petitioner's apartment, and she testified that she recognized both items from the morning of the rape. (Tr. 587-88, 596.) When questioned further, Krioutchkova testified that she only recognized the knife's blade and a small portion of the handle, as petitioner's hand had obscured the rest. (Tr. 588-90.) When the prosecution sought to introduce the photographs of the knife into evidence, defense counsel objected on the grounds that Krioutchkova could not adequately identify the unique design found on the handle of the knife. (Tr. 590-93.) The trial judge overruled the objection and admitted the photographs of the knife into evidence. (Tr. 594)

On June 8, 2006, the jury convicted petitioner of burglary in the first degree, rape in the first degree, sexual abuse in the first degree, and assault in the second degree. (Tr. 948-51.) On July 20, 2006, petitioner was sentenced to thirty years in prison: a twenty-five year concurrent term for burglary and rape, to run consecutive with a five-year concurrent term for assault and sexual abuse. (S. 8.) Petitioner was also sentenced to five years of post-release supervision. (Id.)

## PROCEDURAL HISTORY

Petitioner appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, Second Department, on the following grounds: (1) petitioner's statutory and constitutional rights to a speedy trial were violated by the three-year delay before trial, (2) the trial court erred in admitting photographs of the knife, (3) petitioner's counsel was constitutionally ineffective for

failing to pursue consent as a defense, (4) the trial court erred in qualifying Alice Olosunde as an expert witness, and (5) petitioner's prison sentence was excessive. (Def.'s App. Br.)[9]

On April 14, 2009, the Appellate Division affirmed the judgment of conviction. People v. Colon, 876 N.Y.S.2d 525 (App. Div. 2009). The court rejected petitioner's speedy trial, ineffective assistance, expert witness, and excessive sentence claims on the merits. Id. at 526-27. Petitioner's claim regarding the admission of photographs of the knife was found unpreserved for appellate review, and in the alternative, without merit. Id. at 526. Petitioner applied for leave to appeal to the New York State Court of Appeals (Pet. 4),[10] but his application was denied on August 18, 2009.[11] People v. Colon, 914 N.E.2d 1015 (N.Y. 2009).

On May 10, 2010, petitioner timely filed the instant petition pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus on the same grounds that were raised on direct appeal. Over a year later, on July 5, 2011, petitioner filed a new motion in state court, seeking to vacate the judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law on the basis that he was denied effective assistance of counsel. Petitioner claimed that trial counsel: (1) failed to call an expert or other witness regarding Krioutchkova's mental health issues and medications, (2) failed to authenticate Krioutchkova's medical records or adequately cross-examine Krioutchkova about her medications, (3) failed to pursue a Mapp hearing regarding the knife, or to pursue the "conflict concerning the lost knife," resulting in photographs of the knife being introduced at trial, and (4) failed to pursue the defense of consent after introducing it in his opening statements. (Pet.'s 440.10 Mot., ECF

---

[9] "Def.'s App. Br." refers to petitioner's Brief to the Appellate Division, dated April 1, 2008. (ECF No. 4-2 at 1-27, Ex. A to Aff. in Opp'n.)
[10] "Pet." refers to the instant petition. (ECF No. 1, Petition for a Writ of Habeas Corpus.)
[11] Petitioner's application for leave to appeal has not been made part of the instant record. However, the petition states that the leave application only raised three grounds: ineffective assistance, excessive sentence, and speedy trial. (Pet. 4.) Because petitioner's claims fail nonetheless, the Court assumes that all grounds asserted herein were raised in the leave application. If petitioner's expert witness claim was not included in the leave application, it would be both unexhausted and procedurally barred.

No. 8-1 at 13.) The trial court denied petitioner's motion on August 23, 2012.[12] The court rejected

petitioner's claim that his trial counsel failed to pursue the consent defense pursuant to N.Y. Crim. Proc.

Law § 440.10(2)(a) because the issue was "previously determined, on the merits, as part of [his] direct

appeal." (440.10 Decision at 2.) The court denied petitioner's additional claims for ineffective assistance

pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c) because "although sufficient facts appeared on the

record of the proceeding, defendant failed to raise these issues on his direct appeal." (Id.) Alternatively,

the court held that petitioner's ineffective assistance claims lacked merit. (Id. at 2-4.) On February 14,

2012, the Appellate Division denied petitioner's application for leave to appeal. (Decision & Order of

the Appellate Division, Feb. 14, 2012, ECF No. 8-1 at 40.)

On April 18, 2012, petitioner sought leave to amend the instant petition to add two more grounds

for ineffective assistance of counsel. (ECF No. 8.) Petitioner unsuccessfully raised both grounds in his §

440.10 motion, as well as in an application for leave to appeal to the Appellate Division.

## DISCUSSION

**I.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court

shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the

judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only

grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings"

and the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or

---

[12] The decision is available on the New York State Unified Court System's website. See
http://decisions.courts.state.ny.us/fcas/fcas_docs/2011dec/2300025182003100scrm.pdf (last visited Jan. 11, 2013). The Court
refers to the trial court's four-page decision as the "440.10 Decision."

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "'adjudication on the merits' is one that (1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment." Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

The Supreme Court has held that a state court decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Thus, a federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct 770, 786 (2011).

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam). "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions." Id. at 67-68; see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States.").

## II.   **Exhaustion and Procedural Bar**

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts state court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Pickard v. Connor, 404 U.S. 270, 275-76 (1971) ("[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000). "The purpose of the exhaustion requirement is to ensure that a state court is given the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson, 404 F.3d at 618 (quoting Pickard, 404 U.S. at 275). Consistent with this principle, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." Pickard, 404 U.S. at 276.

If a state prisoner fails to exhaust a ground and that claim can no longer be raised, that claim is procedurally barred from habeas review. Federal courts have no authority to review state court decisions that rest upon an adequate and independent state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The "independent and adequate state ground" doctrine is based on principles of comity and federalism, and is designed to ensure "that the States' interest in correcting their own mistakes is respected in all federal habeas cases." Id. at 729-32. "This rule applies whether the state law ground is substantive or procedural," id. at 729; however, federal review is not foreclosed unless the state court

"clearly and expressly" states that its judgment rests on a state procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989). "[A] federal claimant's procedural default precludes habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Id. at 262. Even where the state court has ruled on the merits of a federal claim "in the alternative," federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default as an independent and adequate state ground. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quotation omitted); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). In order to obtain federal habeas review of a procedurally defaulted claim, petitioner must either show "cause" for the default and "actual prejudice as a result of the alleged violation," Coleman, 501 U.S. at 750, or he must "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," id., by showing that he is "actually innocent," Bousley v. United States, 523 U.S. 614, 622 (1998).

## III. Petitioner's Claims

### A.      The Expert Witness

Petitioner argues that the trial court erroneously qualified nurse midwife Alice Olosunde as an expert witness and that such error unfairly prejudiced him. Petitioner asserts that Olosunde had "minimal credentials" and lacked training and experience with sexual assault examinations at the time she examined Krioutchkova. (Pet. 15–15-A.) The Appellate Division considered and rejected petitioner's claim on the merits. Colon, 876 N.Y.S.2d at 527 ("given the education and employment history of the witness, . . . the trial court providently exercised its discretion in permitting [Olosunde] to provide expert testimony.").

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and does not lie for errors of state law. Estelle, 502 U.S. at 67-68. Petitioner's challenge to the court's qualification of Olosunde is "essentially [a] matter[] of state

10

evidence law and not cognizable on habeas review unless any error rendered the trial fundamentally unfair" in violation of petitioner's constitutional due process rights. Narrod v. Napoli, 763 F. Supp. 2d 359, 382-83 (W.D.N.Y. 2011); see also Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) ("not all erroneous admissions of [unfairly prejudicial] evidence are errors of constitutional dimension"), rev'd on other grounds, Perry v. New Hampshire, 132 S. Ct. 716 (2012). Even where evidence is erroneously admitted in violation of state law, there is no due process violation unless the evidence, when "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, highly significant." Young v. McGinnis, 411 F. Supp. 2d 278, 304 (E.D.N.Y. 2006) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)) (internal quotation marks omitted). Here, petitioner has failed to demonstrate that the state court's evidentiary ruling was erroneous, or that any alleged error violated his right to a fundamentally fair trial.

Under New York law, "the qualification of a witness as an expert is a matter committed to the discretion of a trial judge." Neil v. Walsh, No. 07 Civ. 6685 (DLC), 2009 WL 382637, at *17 (S.D.N.Y. Feb. 17, 2009) (citation omitted).[13] Petitioner has not offered any evidence to show that the trial judge abused his discretion by qualifying Olosunde as an expert in the field of sexual assault examination. See People v. Menendez, 856 N.Y.S.2d 647, 648 (App. Div. 2008) (citations omitted) (court properly permitted expert testimony of sexual assault nurse examiner, "[g]iven the education and employment history of the witness, who was a registered nurse"); People v. Lewis, 790 N.Y.S.2d 132, 132 (App. Div. 2005) (citations omitted) (court properly permitted "nurse practitioner, who was also a sexual assault forensics examiner, to give expert opinion testimony on circumstances under which a sexual assault would not be likely to cause physical trauma, since the witness's extensive training and experience

---

[13] The Clerk of Court is directed to send copies of the attached unreported decisions cited herein to petitioner with this Report.

rendered her qualified to provide such an opinion."); Steinbuch v. Stern, 770 N.Y.S.2d 106, 106 (App.

Div. 2003) (citation omitted) ("the lack of a medical license does not, in and of itself, disqualify a

witness from testifying as an expert on a medical question.").

Even if petitioner could show that the trial judge erred by qualifying Olosunde as an expert

witness, he has not demonstrated that the error rendered his trial fundamentally unfair. Olosunde's

testimony regarding the non-consensual nature of the sex act was hardly "crucial, critical, [or] highly

significant" given the overwhelming evidence against petitioner. Further, any unfairness was mitigated

by defense counsel's efforts to discredit Olosunde's testimony on cross-examination. Reyes v. Artuz,

No. 99-CV-801 (FB), 2000 WL 1804706, at *3 (E.D.N.Y. Dec. 5, 2000) ("Pursuant to clearly

established Supreme Court law, testimony of an expert witness does not deprive a defendant of his right

to confrontation or due process where the defendant can cross-examine the witness and call to the

attention of the factfinder the reasons for giving scant weight to the witness' testimony") (citing

Delaware v. Fensterer, 474 U.S. 15, 21-22 (1985); United States v. Young, 745 F.2d 733, 761 (2d Cir.

1984)).

The admission of Olosunde's testimony was neither erroneous nor a violation of petitioner's due

process rights. Thus, petitioner's claim that the admission of Olosunde's expert testimony violated his

right to a fair trial should be denied because the state court decision was not contrary to or an

unreasonable application of clearly established Federal law.

**B.     The Photographs of the Knife**

Petitioner argues that the trial court erred by admitting photographs of the knife seized from his

home. He argues that the prosecution's failure to preserve the knife, which was accidentally destroyed

by the police, adversely affected his defense because he "lost the opportunity to have the knife

fingerprinted, or to demonstrate that the knife was ornamental or otherwise harmless." (Pet. 10.) He

alleges that "by destroying evidence and showing a picture of a knife to the jury, the petitioner's right to a fair trial was violated." (Pet. 10-A.) During trial, petitioner's counsel unsuccessfully objected to the admission of the photographs based on whether the witness had sufficiently identified the knife. Counsel did not argue that petitioner was prejudiced by the prosecution's failure to preserve the knife.

At the Appellate Division, the court explicitly stated that petitioner's claim regarding the admission of the photographs was unpreserved for appellate review, and "in any event, that his argument is without merit." Colon, 876 N.Y.S.2d at 526. The court explained that, "[w]hile the prosecution is obligated to preserve discoverable evidence for inspection by the defense, the imposition of an appropriate sanction . . . is a matter within the sound discretion of the trial court. The People's failure to preserve the knife resulted in no genuine prejudice to the defendant." Id. (citations omitted).

## 1.    Procedural Bar

Although petitioner's challenge to the state court's ruling is not cognizable on federal habeas review, liberally construed, petitioner alleges a violation of his due process right to present a complete defense. See Edmonds v. Purdy, No. 08 Civ. 8808 (DLC)(AJP), 2009 WL 483189, at *12 (S.D.N.Y. Feb. 26, 2009) (analyzing claim that the prosecution failed to preserve evidence under the due process right to present a defense doctrine); Bailey v. Ercole, No. 06 Civ. 5811 (PKC)(MHD), 2007 WL 4707738, at *6 (S.D.N.Y. Aug. 17, 2007) (analyzing challenge to state court's failure to impose sanctions for prosecution's destruction of potentially useful evidence as alleging a due process violation).

However, petitioner's claim regarding the preservation of the knife is procedurally barred. In dismissing petitioner's claim, the Appellate Division explicitly relied upon N.Y. Crim. Proc. Law § 470.05(2), the contemporaneous objection rule.[14] Colon, 876 N.Y.S.2d at 526. It is well established that

---

[14] This rule requires "at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert

§ 470.05(2) is an adequate and independent state procedural rule which prohibits federal habeas review if explicitly invoked by the state court, regardless of an alternative holding on the merits. See, e.g., Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted).

Because petitioner's default on his claim in state court is an independent and adequate state procedural ground, federal habeas review of the claim is barred unless he can demonstrate cause and prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. To demonstrate "cause," petitioner must show "that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Those factors include "interference by officials that makes compliance with the State's procedural rule impracticable," "a showing that the factual or legal basis for a claim was not reasonably available to counsel," or "constitutionally [i]neffective assistance of counsel." Id. at 494 (quotation marks and citations omitted). A claim of ineffective assistance "must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (quoting Murray, 477 U.S. at 489) (quotation marks omitted).

In his response to the government's opposition to the instant petition, petitioner argues that his claims overcome the procedural bar because his counsel provided constitutionally ineffective assistance by failing to object to the "loss and subsequent showing of a picture" of the knife. (Pet.'s Resp. 7, ECF No. 5.) Petitioner seeks to raise two new grounds for his ineffective assistance of counsel claim, namely that his trial attorney failed to adequately pursue a Mapp hearing or other arguments regarding the "lost

---

reversible error." N.Y. Crim. Proc. Law § 470.05(2). Here, petitioner failed to contemporaneously object to the admission of the knife based on the prosecution's failure to preserve evidence.

knife." (Am. Pet. 5-6.) However, even granting the amendment, petitioner still cannot overcome the procedural bar.

Petitioner may not assert an ineffective assistance claim as cause for the procedural default of another claim when the ineffective assistance claim itself is procedurally defaulted and petitioner has not satisfied the cause and prejudice standard with respect to that claim. Edwards, 529 U.S. at 453. As discussed below, petitioner's amended grounds for ineffective assistance relating to the Mapp hearing and the introduction of photographs of the knife are procedurally barred. Petitioner fails to establish a basis to overcome the procedural default. Thus, petitioner's ineffective assistance claim cannot serve as cause for the procedural default of these other two claims. Accordingly, petitioner's claim that he was denied his due process right to present a defense is procedurally barred.

**2.   Merits**

Even if it were not barred, petitioner's claim that he was denied his constitutional right to present a defense is without merit.

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

California v. Trombetta, 467 U.S. 479, 488-89 (1984) (internal citation omitted). Furthermore, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988).

Petitioner fails to demonstrate that the knife found in his bedroom was constitutionally material to his defense. First, any evidence that could have been obtained from fingerprinting or otherwise testing the knife was unlikely to be exculpatory in light of the other evidence presented at trial: Detective Joyce

Harvin testified that Krioutchkova described the knife to her at the hospital, Krioutchkova identified the knife in photographs before and during the trial, and Krioutchkova testified that petitioner held the knife while threatening to kill her.[15] Second, although it is unclear how the knife could support petitioner's consent defense, petitioner also fails to show that the knife was of such a nature that petitioner would be unable to obtain comparable evidence by other means. Finally, even if petitioner's knife met the standard for constitutional materiality, petitioner has not alleged any facts, and none appear in the record, which reflect bad faith on the part of the police or prosecution. To the contrary, testimony at trial reflects that the knife was mistakenly vouchered as investigation evidence rather than arrest evidence, and that it was destroyed pursuant to police procedure. Petitioner presents no evidence to demonstrate that the accidental destruction of the knife violated his due process rights.

For the reasons stated above, petitioner's claim regarding the admission of the photographs of the destroyed knife should be denied as procedurally barred. In the alternative, petitioner's claim should be denied because the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

## C.    Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective for failing to pursue a theory of consent after promising the jury during opening statements that he would do so. Petitioner argues that his trial attorney (1) failed to subpoena an expert medical witness regarding Krioutchkova's mental health issues and medications; and (2) failed to pursue a Mapp hearing regarding the knife, or to pursue the "conflict concerning the lost knife," resulting in photographs of the knife being introduced at trial. (Am. Pet. 5-6.) Petitioner seeks to amend his petition to add these two new ineffective assistance grounds.

---

[15] Moreover, the prosecution did not need to prove that petitioner used a knife in order to establish the elements of three of the four charges presented to the jury. Only the burglary charge required evidence that "defendant used or threatened the immediate use of a dangerous instrument, namely, a knife." (Tr. 906-09; 937-40.)

1.    **Amendment to the Instant Petition**

Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15; see also Littlejohn v. Artuz, 271 F.3d 360, 363-64 (2d Cir. 2001) ("we see nothing in AEDPA inconsistent with the application of Rule 15"); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 815 (2d Cir. 2000). This is particularly true when a party is proceeding *pro se*. See Cuoco v. Moritsugu, 222 F. 3d 99, 112 (2d Cir. 2000) ("Certainly the court should not dismiss without granting [a *pro se* litigant] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"). Moreover, "[t]he general concern that civil plaintiffs have an opportunity for a full adjudication of their claims is particularly heightened in the AEDPA context, where the gatekeeping provisions of the statute stringently limit a petitioner's ability to raise further issues in a subsequent action." Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002) (citation omitted). Nevertheless, "although Rule 15 requires that leave to amend be 'freely given,' district courts . . . retain discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." Littlejohn, 271 F.3d at 363 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, although petitioner filed his amended petition after the response to the original petition, it cannot be said that petitioner has been dilatory or abusive in bringing his motion to amend. Respondent has not opposed the amendment or alleged any prejudice. Thus, petitioner's motion to amend is granted. See Mendez v. Graham, No. 11–CV–5492 (ARR), 2012 WL 6594456, at *9 (E.D.N.Y. Dec. 18, 2012) (granting amendment even after respondent had filed his response).

2.    **Exhaustion & Procedural Bar**

Petitioner's claim that counsel was ineffective regarding the pursuit of the consent defense is exhausted and not procedurally barred. However, the two new ineffective assistance claims are unexhausted and procedurally barred. Petitioner raised these claims in his § 440.10 petition to the state trial court. The state court denied these claims because petitioner failed to raise them on direct appeal.

17

(440.10 Decision at 2.) "Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection 2(c) [of Section 440.10 of the New York Criminal Procedure Law] provides an independent and adequate procedural bar to federal habeas review." Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) (citing Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003)); see also N.Y. Crim. Proc. Law § 440.10(2)(c) (the court must deny a motion to vacate a judgment when sufficient facts appear on the record underlying the judgment to have permitted adequate review of the issue on direct appeal). As petitioner's amended ineffective assistance of counsel claims are primarily based on matters in the trial record, the state court's reliance on § 440.10(2)(c) is an adequate and independent procedural bar to federal habeas review. The state court's alternative holding on the merits does not undermine the court's explicit reliance on New York's procedural rule as the basis for denying petitioner's motion. See Murden, 497 F.3d at 191 ("Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's default."). As petitioner has not demonstrated the requisite cause and prejudice to overcome the procedural default of his ineffective assistance claims, or that the Court's failure to consider these claims will result in a miscarriage of justice, petitioner's amended ineffective assistance of counsel claims should be denied as procedurally barred.

However, even if the additional claims were not procedurally barred, they are without merit.

**3.   Merits**

To establish ineffective assistance of counsel, petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693 (1984)) (internal quotation marks omitted). A federal court's

18

scrutiny of an ineffective assistance claim is "highly deferential[;] . . . every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . ." Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010) (alteration in original) (quoting Strickland, 466 U.S. at 689).

### a.     Counsel's Failure to Argue the Consent Defense Following Opening Statements

The Appellate Division denied this ground for petitioner's ineffective assistance claim on the merits, finding that, "[c]ontrary to [petitioner's] contention, defense counsel delivered coherent opening and closing statements consistent with the defense theory, and effectively cross-examined the prosecution's witnesses in accordance with that theory." Colon, 876 N.Y.S.2d at 527.

Indeed, the record reflects that trial counsel reasonably pursued the consent defense throughout trial and in his closing argument. Counsel repeatedly attempted to demonstrate that Krioutchkova's version of the events was unreliable, and that petitioner's behavior reflected a consensual encounter with Krioutchkova rather than an attack or rape. In closing argument, counsel argued that there was no knife involved in the incident, that petitioner never tried to conceal his identity from Krioutchkova or the police, and that petitioner's phone call to Krioutchkova resembled the behavior of a man interested in seeing a woman again. (Tr. 872-75.) The record does not reflect that counsel failed to argue petitioner's consent defense following opening statements.

Finally, even if petitioner could establish that his trial counsel's performance was objectively unreasonable, petitioner fails to demonstrate that but for counsel's alleged errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 688, 694. Therefore, petitioner fails to meet the Strickland standard and his claim should be denied. The state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

b.   **Counsel's Failure to Call a Medical Expert Witness**

Petitioner also argues that his trial counsel was ineffective for failing to subpoena a medical expert to testify regarding Krioutchkova's mental health and medications at the time of the incident. (Am. Pet. 2-4.) Petitioner claims that Krioutchkova's treating psychologist could have provided testimony regarding whether "it was possible that [Krioutchkova] consented to the sexual encounter and later did not remember due to her mental state." (Id.)

During Krioutchkova's cross-examination at trial, petitioner's counsel elicited testimony that Krioutchkova received social security benefits due to a psychological disability, that she was under the treatment of a psychiatrist at the time of her encounter with petitioner, and that she was taking three medications prescribed by her psychiatrist. (Tr. 626-29, 639.) On re-direct, Krioutchkova testified that she began seeing a psychiatrist following a surgery in January 2000, and that her medications were antidepressants that did not make her "see things." (Tr. 636-37.) Petitioner's counsel used this testimony during closing arguments to question Krioutchkova's credibility and argue that, "she takes a fair amount of medication to keep herself stable, which gives rise to questions regarding her mental condition." (Tr. 868.)

"The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)); see also Farr v. Greiner, No. 01 CR 6921 (NG)(MDG), No. 01-CV-6921 (NG)(MDG), 2007 WL 1094160, at *32 (E.D.N.Y. Apr. 10, 2007) (citations omitted) ("Counsel's decision to interview or call witnesses is a strategic one entitled to a strong presumption of reasonableness."). "Thus, counsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." Grenier, 417 F.3d at 323 (quotation marks and

citations omitted). "At the same time, however, the decision not to call a witness must be grounded in some strategy that advances the client's interests." Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003) (citing Pavel v. Hollins, 261 F.3d 210, 218-19 (2d Cir. 2001)).

Here, the record demonstrates that defense counsel's strategy was to use Krioutchkova's testimony to portray her as unreliable and unstable, while also maintaining that he did not want to "pick on somebody who has psychiatric problems." (Tr. 868.) Indeed, in light of Krioutchkova's testimony that she was taking antidepressants—rather than "psychotic medications" as alleged by petitioner (Am. Pet. 2), a decision to present the jury with more detailed information about Krioutchkova's condition could have undermined defense counsel's strategy to portray her as psychologically unstable.

Further, even if petitioner's trial counsel's performance was unreasonable, petitioner fails to demonstrate that he suffered prejudice. The record does not reflect any "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Indeed, "[e]ven without an expert witness, from the testimony itself and the manner in which [Krioutchkova] testified, the jurors had sufficient information to determine whether or not to credit [her] account." Mazique v. Ercole, No. 06-CV-1723 (NGG), 2008 WL 2884370, at *9 (E.D.N.Y. July 23, 2008) (denying petitioner's claim regarding counsel's failure to present "psychiatric evidence showing the adverse effects of schizophrenia" on key witness' testimony). Thus, if not procedurally barred, petitioner's ineffective assistance claim should be denied because the state court decision was not contrary to or an unreasonable application of clearly established Federal law.

### c.   Counsel's Failures Regarding the Admission of Photographs of the Knife

Petitioner's second amended claim alleges that his trial counsel failed to pursue a Mapp hearing regarding the knife, or to pursue the "conflict concerning the lost knife," resulting in the introduction of the photographs of the knife at trial "without any sanctions from the court[,] which was highly

21

prejudicial because the complaining witness could not identify the knife in the photographs displayed."
(Am. Pet. 5-6.)

Petitioner's allegations are belied by the record. First, petitioner alleges that his counsel failed to produce court-requested documents that would have provided the basis for an evidentiary hearing under Mapp v. Ohio, 367 U.S. 643 (1961) (holding that evidence obtained by unconstitutional search and seizure was inadmissible in state court). However, the trial transcript reflects that the Court did hold a suppression hearing regarding the knife and that the knife was not suppressed. (Tr. 503-11.) Regardless, the "documents" that petitioner's counsel failed to produce at the colloquy related to the prosecution's failure to disclose Krioutchkova's identification of the knife—not to the recovery of the knife from petitioner's home. (Id. at 511.) Petitioner fails to provide any basis for the argument that his counsel failed to request a Mapp hearing, or that any such failure was unreasonable.

Second, although petitioner alleges that his counsel should have further pursued the issue of the knife's identification, his counsel repeatedly raised the issue. Counsel raised his concerns about the knife during the pre-trial colloquy, as well as when the prosecution sought to admit the photographs into evidence. He also vigorously cross-examined Krioutchkova and Detective Harvin regarding Krioutchkova's identification of the knife.[16] Thus, petitioner fails to demonstrate that his counsel did not "pursue" the issue, or that counsel's performance was unreasonable.

Finally, even if petitioner could establish that his trial counsel's performance was unreasonable, petitioner fails to demonstrate that but for counsel's alleged errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 688, 694. Therefore, even if reached on the merits, petitioner's claim that his counsel provided ineffective assistance by failing to adequately oppose the admission of photographs of the knife should be denied because the state court decision was not contrary to or an unreasonable application of clearly established Federal law.

---

[16] Contrary to petitioner's allegations, Krioutchkova did identify the knife in the photographs at trial. (Tr. 587-96.)

## D.    Speedy Trial

Petitioner argues that he was denied his statutory and constitutional rights to a speedy trial because of the approximately three-year delay between the filing of criminal charges and the commencement of trial. Petitioner raised this claim on direct appeal, and the claim was denied on the merits. Colon, 876 N.Y.S.2d at 526. Petitioner's claim based on N.Y. Crim. Proc. Law § 30.30 is not cognizable on federal habeas review because it raises only the question of whether the state court properly applied state law. See, e.g., People ex rel. Wesley v. Riordan, No. Civ.A.CV-05-3958 (DGT), 2005 WL 2148959, at *2 (E.D.N.Y. Sept. 7, 2005) (quotation marks and citations omitted) ("[N.Y. Crim. Proc. Law] § 30.30, which addresses only the problem of prosecutorial readiness, . . . is not a speedy trial statute in the constitutional sense. Therefore, a claim based on [N.Y. Crim. Proc. Law] § 30.30 does not raise a federal constitutional claim upon which federal habeas relief may be granted.").

To the extent petitioner asserts a violation of his Sixth Amendment right to a speedy trial,[17] his constitutional claim should be denied. To determine whether pre-trial delay amounts to a violation of the Sixth Amendment, the Court assesses four factors: 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of his right, and 4) the prejudice to the defendant. United States v. Abad, 514 F.3d 271, 274 (2d Cir. 2008) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). These "are related factors and must be considered together with such other circumstances as may be relevant." United States v. Williams, 372 F.3d 96, 113 (2d Cir. 2004).

Petitioner was charged on April 5, 2003, and trial commenced on June 1, 2006. A delay of over three years is presumptively prejudicial and requires further inquiry. See Doggett v. United States, 505 U.S. 647, 652 & n.1 (1992) (noting that generally, delays of more than one year are presumptively

---

[17] Petitioner's direct appeal also raised his constitutional right to a speedy trial pursuant to N.Y. Crim. Proc. Law § 30.20 (Def.'s App. Br. 8), which, unlike § 30.30, "does embody the federal constitutional right to a speedy trial." Woodard v. Berry, No. CV–90–1053 (ILG), 1992 WL 106508, at *2 (E.D.N.Y. Apr. 24, 1992).

prejudicial); United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting the "general consensus that a delay over eight months meets this standard.").

Although the three-year delay is significant, it is shorter than delays in other cases where no Sixth Amendment violation has been found. See, e.g., Barker, 407 U.S. at 533 ("well over five years"); United States v. Lane, 561 F.2d 1075, 1078 (2d Cir. 1977) ("just under five years"); Smith v. Maher, 468 F. Supp. 2d 466, 478 (W.D.N.Y. 2006) (collecting cases).

When considering the cause for delay, courts assign different weight to different types of delays. Doggett, 505 U.S. at 531. For example,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

Barker, 407 U.S. at 531 (footnote omitted). Here, much of the delay was caused by plea bargain negotiations and petitioner's request to have additional items tested for DNA evidence.[18] Although petitioner argues that the prosecution "repeatedly stalled matters" by delaying their production of the grand jury minutes and the additional items for DNA testing, the record does not reflect any deliberate attempts by the government to delay the trial or hamper petitioner's defense. See United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980) (delays due to "institutional dysfunction" weighed less heavily than deliberate delays); Lane, 561 F.2d at 1079 ("While the record here contains some rather long unexplained delays, there is no indication that these are attributable either to deliberate procrastination or even negligent inaction on the part of the Government"); Smith, 468 F. Supp. 2d at 478 (finding this

---

[18] As noted above, the record does not reflect the reason for the eleven-month delay between the resolution of petitioner's speedy trial motion on July 26, 2005 and the beginning of his trial. Neither party has made a specific argument regarding this period in the instant petition. Likewise, at the Appellate Division, although petitioner's constitutional speedy trial claim was addressed, the government stated that "[t]he period from February 4, 2005 to the commencement of defendant's trial is not discussed herein, because defendant does not claim that any portion of that period is chargeable to the People." (Resp't App. Br. 18 n.8, ECF No. 4-2 at 28-69, Ex. B to Aff. in Opp'n.)

24

factor to weigh in favor of the government where "[n]othing in the record indicates a willful attempt by the prosecution to delay the trial").

As to petitioner's assertion of his right to a speedy trial, he filed his motion to dismiss based on speedy trial grounds on the date the case was scheduled to proceed with hearings and trial. Although transcripts of earlier court appearances reflect that defense counsel did state that he had some intention to file a speedy trial motion, the record does not reflect why the motion was not filed earlier. (See transcripts of appearances on Oct. 21, 2004 and Dec. 2, 2004, ECF No. 4-4 at 70-74.)

Finally, petitioner has not articulated any prejudice caused by the delay.[19] Petitioner's ability to present a defense was not impaired by the delay, and petitioner was at liberty for almost the entire three-year period. See generally Barker, 407 U.S. at 532 (identifying the three interests a defendant has in receiving a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.") (citation omitted).

Balancing the factors above, the state court's decision on petitioner's speedy trial claim was not contrary to or an unreasonable application of clearly established Federal law. Therefore, the claim should be denied.

### E.    Excessive Sentence

Petitioner claims that his thirty-year prison sentence is excessive because this was his first offense, and because he received consecutive sentences resulting in greater prison time than the maximum sentence provided for his individual offenses alone. (Pet. 17-A.) Petitioner raised these claims on direct appeal and the Appellate Division rejected them on the merits. Colon, 876 N.Y.S.2d at 527 ("the trial court legally imposed consecutive sentences for his convictions of rape in the first degree and sexual abuse in the first degree, as each count involved a separate sexual act constituting a distinct

---

[19] To the extent petitioner alleges prejudice regarding the destruction of the knife, the Court has already addressed this claim.

offense."). However, no federal constitutional issue is presented for habeas review when the sentence imposed falls within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Faria v. Perez, No. 04-CV-2411 (RRM), 2012 WL 3800826, at *14 (E.D.N.Y. Sept. 2, 2012) (finding no basis for habeas relief regardless of petitioner being a first-time offender who "had been otherwise a law-abiding citizen"). Moreover, "[a] challenge to the imposition of consecutive sentences fails to present an issue of constitutional dimension if the sentence falls within the range prescribed by state law." Ashby v. Senkowski, 269 F. Supp. 2d 109, 115 (E.D.N.Y. 2003); see also United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002) (quotation marks and citation omitted) ("there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences."); Davis v. Greiner, No. 02-CV-6802 (JBW), 03-MISC-0066 (JBW), 2003 WL 23198786, at *12 (E.D.N.Y. Oct. 30, 2003) ("[Petitioner's] claim that his consecutive sentence should be set aside because it violates [N.Y. Penal Law] § 70.25(2), is not reviewable in a federal habeas proceeding.").

In this case, petitioner's aggregate prison sentence of thirty years falls within the statutorily prescribed range. Petitioner was sentenced to twenty-five years for rape in the first degree, twenty-five years for burglary in the first degree, five years for sexual abuse in the first degree, and five years for assault in the second degree. (S. 8.) Rape and burglary are Class B violent felony offenses with a sentencing range between five and twenty-five years. N.Y. Penal Law §§ 70.02(1), (3). Assault and sexual assault are Class D violent felony offenses with a range between two and seven years. Id. Petitioner's sentence for each conviction was thus within the range prescribed by New York law. Furthermore, New York state law authorizes the trial court to impose consecutive sentences where there are multiple convictions and the offenses represent separate and distinct acts. N.Y. Penal Law § 70.25(2); see also Arocho v. Walker, No. 01 Civ. 1367(NRB), 2001 WL 856608, at *3 (S.D.N.Y. July 27, 2001) (citations omitted) (finding that petitioner failed to state a claim regarding his consecutive

sentences for rape and sexual abuse because "New York allows for consecutive sentencing for separate physical acts"); Phillips v. Miller, No. 01 Civ. 1175(DF), 2000 WL 33650803, at *16 (S.D.N.Y. Dec. 3, 2000) (collecting New York state cases authorizing consecutive sentences for robbery and separate sexual acts arising from a single incident); People v. Salcedo, 92 N.Y.2d 1019, 1021 (1998) ("[W]here the crimes are committed through separate and distinct acts, even though part of a single transaction, consecutive sentences are possible regardless of whether the statutory elements of the offenses overlap.").

As petitioner's sentence, both in the aggregate and for each conviction, falls within the range prescribed by state law, petitioner's alleged excessive sentence claim does not present a federal constitutional issue for habeas corpus review.

## CONCLUSION

For the reasons stated above, it is respectfully recommended that the instant amended petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. §2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. §1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated:   January 14, 2013
         Brooklyn, New York

28